488 So.2d 1092 (1986)
Salvadore A. MARZULA, Plaintiff-Appellant,
v.
T.E. WHITE, Jr., d/b/a T.E. White Maintenance Co., Defendant-Appellee.
No. 17,743-CA.
Court of Appeal of Louisiana, Second Circuit.
May 7, 1986.
Rehearing Denied June 5, 1986.
*1094 Hall & Golden by W. Eugene Golden, Shreveport, for plaintiff-appellant.
Mayer, Smith & Roberts by Richard G. Barham, Shreveport, for defendant-appellee.
Before HALL, JASPER E. JONES and SEXTON, JJ.
JASPER E. JONES, Judge.
The plaintiff in this personal injury action is Salvadore A. Marzula. The defendant is T.E. White, Jr., doing business as T.E. White Maintenance Company. Marzula appeals a judgment holding his negligence and that of his supervisor contributed 70% to the cause of his injury and applying comparative negligence to reduce the value of his claim by 70%. Defendant answered the appeal seeking to have the judgment against him reversed. We amend and affirm.
The assignments of error made by the parties present four issues for decision:
(1) Did the trial court err in failing to find defendant's employees were the borrowed employees of plaintiff's employer and, therefore, the co-employees of plaintiff, resulting in plaintiff's cause of action being barred by LSA-R.S. 23:1032?
(2) Did the trial court err in finding defendant and his employees negligent?
(3) Did the trial court err in finding plaintiff contributorily negligent?
(4) Did the trial court err in imputing the negligence of plaintiff's supervisor to plaintiff to reduce his recovery?
Background Facts
Plaintiff was an employee of Pumpmasters Corporation, a firm engaged in the business of installing service station equipment. In February, 1981, Pumpmasters had a contract which required the installation of underground gasoline storage tanks at a convenience store being constructed in Shreveport, Louisiana.
Pumpmasters contracted with the defendant to excavate the hole for the tanks because the large size of the tanks made it impractical to bury them with its own small earth moving equipment. Pumpmasters frequently made such arrangements with defendant when its own equipment was inadequate for a job.
On February 3, 1981, three of defendant's employees dug the hole for the tanks using two large trackhoes. When the hole had been dug to a depth of approximately twelve feet, digging was stopped while Marzula and Brewster, an employee of defendant, descended into the hole to aid Leo Jones, Pumpmasters' superintendent, in taking measurements to determine the dimensions of the hole. While the men were in the hole, one side of it collapsed causing serious injuries to Marzula.
Marzula brought this action alleging the accident was caused by the negligence of White. White answered denying any negligence and pleading contributory negligence of the plaintiff asserting plaintiff's sole remedy was in worker's compensation. White then made a motion for summary judgment on the ground he and his employees were statutory employees of Pumpmasters and this tort action was, therefore, barred by the Worker's Compensation Law. The district judge granted the motion for summary judgment and plaintiff appealed. This court reversed the granting of the motion for summary judgment. On remand by agreement of counsel and the court, the trial was bifurcated and the liability issue was tried first. The trial court found defendant's employees were not the borrowed employees of Pumpmasters and plaintiff, therefore, was not barred by the Worker's Compensation Law from suing White in tort.[1] The trial court further *1095 found the accident was caused by the combined fault of plaintiff, Leo Jones and White. The trial judge determined the defendant to be 30% at fault and plaintiff and his supervisor to be 70% at fault.
ISSUE NO. 1"Borrowed Employees"[2]
Defendant, contends the trial court erred in finding that his employees were not the borrowed employees of Pumpmasters Corporation. He argues that Leo Jones, the foreman of Pumpmasters, was in total charge of the excavation and had the authority to send any of his employees off the job. Defendant further argues that Leo Jones told his employees where and how to dig the hole. Therefore, he contends his employees were the statutory employees of Pumpmasters and plaintiff's exclusive remedy is in worker's compensation under LSA-R.S. 23:1032.
Plaintiff contends the trial court was correct in holding that the employees of T.E. White, Jr., were not the statutory employees of Pumpmasters. Plaintiff points out that T.E. White, Jr. paid these employees and had the sole authority to hire and fire them. Plaintiff further argues that defendant's employees were in actual control of the operation of the excavating equipment. Finally, plaintiff points out that Pumpmasters frequently made such arrangements with defendant when its own equipment was inadequate for a job.

APPLICABLE LAW
Whether a person is a borrowed servant is an issue of fact. LeBlanc v. Roy Young, Inc., 308 So.2d 443 (La.App. 3d Cir.1975), writ den., 313 So.2d 240 (1975); Vincent v. Ryder Enterprises, Inc., 352 So.2d 1061 (La.App. 3d Cir.1977); Nichols Construction Corp. v. Spell, 315 So.2d 801 (La.App. 1st Cir.1975).
There is a presumption that the general employer retains control of his employee. Benoit v. Hunt Tool Co., 219 La. 380, 53 So.2d 137 (1951); Pagitt Well Service, Inc. v. Sam Broussard, Inc., 293 So.2d 631 (La.App. 3d Cir.1974), writ den., 295 So.2d 817 (La.1974).
The party who alleges that an employee has become a borrowed servant bears the burden of proof on that issue and a mere showing of a division of control is not enough to meet that burden. Benoit v. Hunt Tool Co., supra; Nichols Construction Corp. v. Spell, supra.
In order for an employee of the general employer to become the borrowed employee of the special employer, it must be shown that the employer-employee relationship between the general employer and his employee has been suspended and a new and like relationship has been created between the general employer's employee and the special employer. This change of relationship does not occur when the work being performed by the general employer's employee is the general employer's work and where he retains some control over his employee. Benoit v. Hunt Tool Co., supra; LeBlanc v. Roy Young, Inc., supra.
In the instant case, the trial judge held that defendant's employees were not the borrowed employees of Pumpmasters. The trial judge found defendant's employees controlled the operation of the excavating equipment and were hired by defendant. Although the trial judge found Leo Jones controlled the starting and stopping of the work and the location, shape and slope of the excavation, he concluded that this was not enough control over the employees of *1096 T.E. White, Jr., to make them the borrowed employees of Pumpmasters. We agree.
It was defendant's burden to prove that the employer-employee relationship with his employees had been suspended and a new and like relationship was created between these employees and Pumpmasters. This change of relationship does not occur when the work being performed by the general employer's employee is the general employer's work and where he retains some control over his employee. Benoit v. Hunt Tool Co., supra. Here, defendant, as the general employer, retained some control over these employees. Defendant had the sole authority to fire these employees and they were in control of the manner in which these machines were operated. The fact that Pumpmasters and defendant had a continuing arrangement where they loaned each other employees for their mutual benefit also tends to negate the application of the borrowed employee doctrine. See LeJeune v. Allstate Ins. Co., 365 So.2d 471 (La.1978). The record reveals defendant inspected the hole while it was being excavated. Defendant was checking on the work being performed by his employees. If he had been dissatisfied with the manner in which they were functioning he could have given them new directions or terminated them. This fact shows that the employer-employee relationship between defendant and his employees was not suspended. The trial court was, therefore, correct in finding that defendant's employees were not the borrowed employees of Pumpmasters.
ISSUE NO. 2Defendant's Negligence
Defendant answered the appeal contending the trial court erred in finding him 30% liable for plaintiff's injuries. He argues that his employees were not negligent because it was Leo Jones who decided not to slope or brace the sides of the excavation. He points out that one of his employees, Phillip Brewster, questioned the wisdom of excavating the site without sloping the sides, but Leo Jones instructed the employees to continue the excavation without sloping the sides. Defendant further points out that both trackhoes were approximately thirty to forty feet away from the hole when the cave-in occurred. Therefore, he argues the finding of fault against him and his employees is manifestly erroneous and should be overturned.
Plaintiff contends the defendant's employees were negligent in failing to comply with the U.S. Department of Labor Occupational Safety and Health Administration regulations governing such excavations which require sloping the walls of the hole. Plaintiff further contends defendant was negligent in failing to take steps to rectify the danger presented by the unsloped excavation. In addition, plaintiff contends the defendant's employees were negligent in operating their equipment near the edge of the excavation while plaintiff was taking measurements.
The trial judge found defendant's employees negligent in "knowing of the danger of what they were doing as part of the combined effort and should bear a part of the cost thereof." The trial court also found White at fault.
The trial court was right in finding White and his employees negligent. The evidence established the manner in which the hole was dug created a danger of cave-in and that the defendant and his employees were well aware of this fact. At least one of the defendant's employees was negligent in operating one trackhoe near the excavation site while plaintiff was inside taking measurements. Thomas E. White, IV, who operated one of the trackhoes on this job, testified the other trackhoe was being operated near the hole when the cave-in occurred.[3] This testimony is somewhat corroborated by the testimony of Leo Jones who testified that one of the trackhoes was *1097 idling near the excavation. The evidence established that vibration from the trucks or the operation of the heavy trackhoe machine could contribute to the cause of the cave-in.
Negligence is conduct which falls below the standard established by law for the protection of others against unreasonable risk or harm. It is a departure from the conduct expected of a reasonable prudent man under like circumstances. Pence v. Ketchum, 326 So.2d 831 (La.1976); Craft v. Caldwell Parish Police Jury, 455 So.2d 1226 (La.App. 2d Cir.1984). We conclude that defendant's employees were negligent in continuing to operate one of the trackhoes near the excavation when the cave-in occurred. We further conclude that T.E. White, Jr., was negligent in observing the unsloped sides of the excavation, but failing to take any steps to rectify the danger. T.E. White, Jr., testified that he knew the hole should have been sloped to some extent, but after talking to Leo Jones about it Jones decided to take a chance rather than slope it. White stated that he did not stay on the job and pursue the consideration of sloping the excavation to prevent or lessen the possibility of cave-in.[4] Although Jones denied seeing White on the job the morning of the cave-in, he testified that he and White usually jointly considered whether or not there was a danger of cave-ins and made, together, a determination of the extent of slope required in the hole.[5] These circumstances, established in the record, provide substantial evidence to support the trial judge's conclusion that defendant, T.E. White, Jr., was guilty of negligence which contributed to the accident which caused plaintiff's injuries. Defendant was negligent in leaving the job and permitting the excavation to continue without any slope to the side of the hole. The trial court, therefore, was correct in finding T.E. White, Jr., and his employees negligent.
ISSUE NO. 3Plaintiff's Contributory Negligence
Plaintiff contends the trial court erred in finding that he was contributorily negligent. He argues that an employee who undertakes a task which involves a risk of harm as a condition of his employment cannot be held at fault when he is injured while doing his best to discharge his employment duties. Plaintiff contends that because he was ordered to enter the excavation by his supervisor, he did not voluntarily assume the risk of injury from a cave-in. He contends he did not act unreasonably in entering the excavation because he could not refuse to do so without the fear of losing his job. Plaintiff testified he had a wife and a two week old son at the time of the accident.
Defendant argues the trial court was correct in finding plaintiff contributorily negligent. Defendant argues plaintiff could have taken the measurements from the top rather than the bottom of the excavation. Defendant further argues the trial court was correct in concluding that plaintiff knew the risk of injury because he personally observed an earlier cave-in.
The trial court found the accident was caused in part by plaintiff's supervisor who directed the digging of the hole without sloping the sides. The trial court also found that plaintiff's supervisor contributed to plaintiff's harm by ordering him to go into the hole and measure it. The trial court found the plaintiff to be contributorily negligent in taking the measurements from the bottom, rather than the top of the hole because he knew a cave-in could occur while he was in the hole which had not been braced or sloped and in which an earlier cave-in had occurred.

APPLICABLE LAW
Contributory negligence is conduct on the part of the plaintiff which is below the *1098 standard to which he should conform for his own safety and of a reasonable man under like circumstances. Straley v. Calongne Drayage & Storage, Inc., 346 So.2d 171 (La.1977); Craft v. Caldwell Parish Police Jury, supra. The burden of proving contributory negligence rests upon the defendant. Brown v. White, 430 So.2d 16 (La.1982).
A workman who has no alternative but to subject himself to hazardous duties in order to perform his work pursuant to a direct order of a supervisor is not guilty of unreasonable conduct by failing to avoid a known risk because to decline to do the work could subject him to the loss of his job which he needs for the support of himself and his family. Chaney v. Brupbacher, 242 So.2d 627 (La.App. 4th Cir.1970); Blakeney v. Tidewater Compression Service, 463 So.2d 914 (La.App. 2d Cir.1985), writ den., 467 So.2d 535 (La.1985); Price v. Mitchell Const. Co., Inc., 482 So.2d 869 (La.App. 2d Cir.1986), writ den., 484 So.2d 671 (La.1986); see Brown v. White, supra. A workman whose duties require that he work in hazardous circumstances who is injured while doing his best to discharge those duties is not guilty of contributory negligence even though he is fully aware of the risk of injury to which he is subjected while performing his work. Okeefe v. Warner, 288 So.2d 911 (La.App. 1st Cir. 1973), writ den., 293 So.2d 170 (La.1974); Blakeney v. Tidewater Compression Service, supra; Price v. Mitchell Const. Co., Inc., supra.
In the instant case, Marzula testified, and the trial judge found, that he was directed by his supervisor to enter the excavation to take measurements. He was working as an assistant to his supervisor who was at the top of the hole. Plaintiff further testified that he felt he had to either follow these directions or go home. There was no evidence that plaintiff was doing anything less than his best to discharge his duties when he was injured. Plaintiff was, therefore, not unreasonable in entering the excavation and taking the measurements as directed. Leo Jones testified that he directed plaintiff to enter the hole and drive some stakes while Jones obtained a grade reading. The task was performed under the very eye of the supervisor and the defendant who has the burden of proving contributory negligence did not show that the plaintiff had any alternative to the performance of the job while being in the hole. There is no evidence that the task could have been performed in any other manner. The plaintiff did not voluntarily subject himself to a known risk of harm. He was mandated to undertake the risk by economical necessity and for this reason his conduct was not unreasonable and he was not guilty of contributory negligence. The trial court was clearly wrong in finding plaintiff contributorily negligent.
ISSUE NO. 4Did the Trial Court Err in Imputing the Negligence of Plaintiff's Supervisor to Plaintiff?
The trial court found the plaintiff and his superior, Jones, jointly guilty of 70% of the fault that brought about the accident. We have found that the plaintiff is not guilty of any contributory negligence. The fault of Leo Jones was substantial and contributed, along with the fault of defendant, White, to causing the accident. The evidence established Jones had been in this business many years and supervised the digging of many holes. He knew the walls of the hole should have a slope or be braced to eliminate the danger of cave-in. Jones directed the hole be dug without sloping the sides and made no attempt to brace them. The plaintiff had no control whatsoever over his superior, Jones, and Jones' fault cannot be attributed to the plaintiff. The trial court is clearly wrong to impute the negligence of Leo Jones to the plaintiff and use the imputed negligence of Jones to reduce plaintiff's claim under the rules of comparative negligence.
When the negligence of two tortfeasors contributes in causing harm to a third party, each tortfeasor is responsible for the damage and they are solidarily liable. *1099 LSA-C.C. art. 2324.[6]Dixie Drive-It Yourself System of New Orleans Co. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962); Shaw v. New York Fire & Marine Underwriters, Inc., 252 La. 653, 212 So.2d 416 (1968); Coleman v. Douglas Public Service, Inc., 423 So.2d 1205 (La. App. 4th Cir.1983), writ den., 429 So.2d 153 (La.1983). The principal result of solidarity is to prevent division of the debt and to obligate each debtor for the whole, as if he were alone. Hoefly v. Government Employees Ins. Co., 418 So.2d 575 (La.1982).
In the instant case, plaintiff was barred by LSA-R.S. 23:1032 (see footnote 1) from suing his employer and fellow employee in tort.
We find the doctrine of comparative fault not to be applicable because the plaintiff was not guilty of any negligence that contributed to the accident. The defendant is liable to the plaintiff for all of his damages caused by the defendant's fault.
We AMEND the trial court judgment and recast it to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment here in favor of the plaintiff, SALVADORE A. MARZULA, and against the defendant, T.E. WHITE, JR., d/b/a T.E. WHITE MAINTENANCE COMPANY, for one hundred percent (100%) of the damages suffered by plaintiff.
All cost on appeal are assessed against the defendant.
NOTES
[1] LSA-R.S. 23:1032 provides in pertinent part:

"The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner or employee of such employer or principal, for said injury, or compensable sickness or disease. For purposes of this Section, the word `principal' shall be defined as any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof."
[2] The resolution of this issue is of very little importance since the evidence established that the defendant, who was not contended to be a borrowed employee, was guilty of substantial negligence that contributed to plaintiff's injury.
[3] Q. He was moving the machine, and moving the sand with a machine at that time?

A. Yes.
Q. At the edge of the hole?
A. Yes, I believe. I don't really recall what he was doing but he was doing something. I was over there talking to Leo.
[4] "The hole should have been sloped to some extent. To what extent I don't know. I didn't stay on the job long enough to worry with that. I don't know how much it could have been sloped."
[5] "Generally we got our heads together, as far as Mr. White and myself, and decided what to do with it. And normally I don't have to tell Mr. White to do it. He knows to taper the hole and also I know to taper it if it is extremely bad."
[6] C.C. art. 2324 provides in pertinent part:

"Persons whose concurring fault has caused injury, death or loss to another are also answerable in solido .."