567 So.2d 643 (1990)
Joan C. CIVELLO
v.
Lionel F. JOHNSON, Cox Cable New Orleans, Inc., Urban Services and Contracting, Inc., Texas Fire and Casualty Insurance Company, CNA Insurance Company, John Doe and State Farm Insurance Company.
No. 89-CA-1654.
Court of Appeal of Louisiana, Fourth Circuit.
August 31, 1990.
Writ Denied November 26, 1990.
*644 Raymond C. Burkhart, Jr., New Orleans, for plaintiff/appellant.
Michael P. Mentz, Hailey, McNamara, Hall, Larman & Papale, Metairie, for third-party defendant/appellant.
Scott G. Jones, Hulse, Nelson & Wanek, New Orleans, for defendant/appellee.
Before LOBRANO, WARD and ARMSTRONG, JJ.
ARMSTRONG, Judge.
Plaintiff appeals the trial court's granting of summary judgment in favor of defendant, Cox Cable New Orleans, Inc. (Cox). Third-party defendant, Penn-America Insurance Company (Penn-America) dependent upon our disposition of Cox's appealappeals the trial court's annulling of an earlier summary judgment granted in its favor which dismissed Cox's third-party demand against it.
*645 This appeal arises out of an automobile accident which occurred on May 10, 1985. Plaintiff was riverbound on Nashville Avenue when she stopped for a red signal light in the median of So. Claiborne Avenue. Defendant/driver, Lionel F. Johnson, traveling in a downtown direction on So. Claiborne Avenue, stopped or slowed down at the intersection of Nashville Avenue and was struck from the rear by a "phantom" vehicle, causing his vehicle to impact the right front section of plaintiff's car. Plaintiff subsequently instituted this action naming as defendants, Johnson, Cox, for whom Johnson was performing installation work, Cox's insurer Transportation Insurance Company (TIC) and CNA Insurance Company (CNA), Johnson's employer, Urban Services and Contracting, Inc. (Urban), its insurer, Texas Fire and Casualty Insurance Company (Texas), and John Doe (the "phantom" motorist). Cox filed third-party demands against Urban and its insurers, Penn-America and National Union Fire Insurance Company.
On July 17, 1987, Penn-America filed a motion for summary judgment against Cox, claiming there was no genuine issue as to material factits policy issued to Urban excluded liability coverage for bodily injury arising out of the use of any automobile. On November 20, 1987, Penn-America filed a motion to set a hearing for its motion for summary judgment. On December 11, 1987, with only counsel for Penn-America present, the trial court rendered judgment in favor of Penn-America, dismissing Cox's third-party claim against it.
On November 7, 1988, Cox filed a motion for summary judgment in its favor against plaintiff, "and/or" for reconsideration of the trial court's granting, almost one year previously, of Penn-America's motion for summary judgment. On December 16, 1988, Cox filed a petition for nullity of the judgment of the trial court granting Penn-America's motion for summary judgment. On December 28, 1988, Cox filed a motion and order to amend the trial court's judgment granting Penn-America's motion for summary judgment. This was the third attempt by Cox to salvage a claim against Penn-America.
On January 23, 1989, the trial court considered the three motions filed by Cox. The court granted Cox's petition to annul its earlier judgment dismissing Cox's claim against Penn-America. The trial court further granted Cox's motion for summary judgment, dismissing plaintiff's claims against Cox and its insurer, TIC.
Plaintiff has appealed the judgment dismissing her claims against Cox and TIC. Penn-America has appealed that portion of the judgment annulling the earlier judgment in its favor, which had dismissed Cox's third-party claim against Penn-America. The appeal by Penn-America is contingent upon our disposition of plaintiff's appealif we affirm the judgment dismissing plaintiff's claims against Cox and TIC, Cox will have no need or right to maintain a third-party action against Penn-America.
We will first address plaintiff's appeal.
A summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966; Charles v. Faust, 487 So.2d 612 (La.App. 4th Cir. 1986). Summary judgments are not favored and any doubt will be resolved against the granting thereof. Jewell v. Thompson, 386 So.2d 689 (La.App. 3rd Cir. 1980), writ denied, 393 So.2d 746 (La.1980). The mere belief that a litigant will be unlikely to prevail at trial is not a sufficient basis to warrant the granting of a summary judgment. Laufer v. Touro Infirmary, 334 So.2d 541 (La.App. 4th Cir.1976).
One of the dispositive issues in plaintiff's appeal is whether Johnson, an employee of Urban, could have been considered Cox's "borrowed servant" at the time of the accident. If so, then Cox can be held vicariously liable under the doctrine of respondeat superior for Johnson's delicts, just as if he had been one of Cox's regular employees.
*646 The concept of borrowed servant was discussed by the Louisiana Supreme Court in Benoit v. Hunt Tool Co., 219 La. 380, 53 So.2d 137 (1951). The court quoted extensively from a U.S. Supreme Court decision in Standard Oil Company v. Anderson, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480 (1909):
"`It sometimes happens that one wishes a certain work be done for his benefit, and neither has persons in his employ who can do it nor is willing to take such persons into his general service. He may then enter into an agreement with another. If that other furnishes him with the men to so work, and places them under his exclusive control in the performance of it, those men became [become] pro hac vice the servants of him to whom they are furnished. But, on the other hand, one may prefer to enter into an agreement with another that other, for a consideration, shall himself perform the work through servants of his own selection, retaining the direction and control of them. In the first case, he to whom the workmen are furnished is responsible for their negligence in the conduct of the work, because the work is his work, and they are, for the time, his workmen. In the second case, he who agrees to furnish the completed work through servants over whom he retains control is responsible for their negligence in the conduct of it, because, though it is done for the ultimate benefit of the other, it is still, in its doing, his own work. To determine whether a given case falls within the one class or the other we must inquire whose is the work being performed,a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work. Here we must carefully distinguish between authoritative direction and control, and mere suggestion as to details or the necessary cooperation, where the work furnished is part of a larger undertaking.' (Italics ours.)"
Whether an employee is borrowed is a question of fact. Marzula v. White, 488 So.2d 1092 (La.App. 2d Cir.1986); Nichols Construction Corporation v. Spell, 315 So.2d 801 (La.App. 1st Cir.1975). The decisive issue is one of control. Who controlled the employee at the time of the accident? When considering this issue there is a presumption that the general employer (in this case Urban) had control of the servant. To establish otherwise requires more than showing a mere division of control. It must be shown that the employer-employee relationship between the general employer and its employee has been suspended and a new and like relationship has been created between the general employer's employee and the special employer (in this case alleged to be Cox). The new employer must assume the control of, or right to control, the general employer's employee. Barrios v. Service Drayage Company, 250 So.2d 135 (La.App. 4th Cir.1971), writs denied, 259 La. 805, 806, 253 So.2d 66 (La.1971); Marzula v. White, supra; Nichols Construction Corporation v. Spell, supra.
Plaintiff also addresses the issue of Urban's status as an "independent contractor." An independent contractor is one who renders service in the course of an occupation representing the will of his employer only as to the the result of his work and not as to the means by which it is accomplished. Hartwig Moss Ins. Agency, Limited v. Board of Com'rs of Port of New Orleans, 206 La. 395, 19 So.2d 178 (1944). As in the case of a borrowed servant, the decisive issue is one of control. The court must determine whether and to what degree the right to control the work is reserved by the principal employer. Arledge v. Royal-Globe Insurance Company, 401 So.2d 615 (La.App. 3rd Cir.1981). Relevant factors include the independent nature of the contractor's business, the existence of a contract for performance of a specific job, payment of a fixed price for the work, employment by the contractor of assistants who are under his control, the furnishing of necessary tools and materials by the contractor and his right to control the conduct of his work while in progress. Williams v. Gervais F. Favrot Company, *647 499 So.2d 623 (La.App. 4th Cir.1986), writ denied, 503 So.2d 19 (La.1987). Where a contract provides that the principal employer's control over the contractor is limited to providing plans and specifications, and his only right is to insist that the job be performed in accordance with those plans and specifications, an independent contractor relationship exists. Williams v. Gervais F. Favrot Company, supra; Crutti v. Frank, 146 So.2d 474 (La.App. 4th Cir. 1962).
In support of its motion for summary judgment Cox filed affidavits by two of its employees. The first was by Kay Robinson, who was then the personnel manager at Cox. Robinson stated that Cox had never employed Johnson, he had never filled out an employment application at Cox, and Cox had never paid him any wages. The second affidavit was by Angeline White, who was then the facilities manager at Cox. White stated that Cox had never owned a truck identified as the one Johnson was driving at the time of the accident. Attached to the affidavit was a copy of a report from the Louisiana Department of Public Safety and Corrections, Office of Motor Vehicles which purportedly showed that no such vehicleone with that license plate numberwas registered in the state of Louisiana.
Cox also filed a copy of an "Installation Agreement" between itself and Urban. The agreement provided that Urban would install cable equipment which would be furnished by Cox. Urban agreed to install the equipment in accordance with guidelines and standards set forth by Cox. Cox agreed to pay Urban a fixed sum for work performed. Cox reserved the right to inspect the work and correct or repair, at Urban's expense, such work that did not conform to its guidelines and standards or which was the result of "poor workmanship." The agreement provided that the work was to be performed in accordance with National Electrical Safety Code specifications, and other applicable laws, regulations, and standards. Urban agreed to employ "adequate, competent and necessary personnel to perform all work in a workmanlike manner," and not use subcontractors without prior authorization from Cox.
A clause in the contract provided that the relationship between Cox and Urban was one of employer and independent contractor. It further provided that no agent, employee or servant of Urban was to be deemed the agent, employee or servant of Cox. This clause of the agreement also stated that Cox was only interested in the "results obtained" under the contract, and that the manner and means of conducting the work were under the control of Urban.
In opposition to Cox's motion for summary judgment plaintiff filed two affidavits, together with portions of depositions taken of one affiant and the plaintiff. An accident investigation report taken by Officer David E. Wells was attached to his affidavit. His accident report listed Cox as the registered owner of the truck Johnson was drivingin his affidavit Officer Wells stated that this "was proven when he [Johnson] gave me the registration." The accident report reflects that Johnson apparently had no proof of automobile liability insurance. He also said Johnson informed him he was employed by Cox and showed him a Cox employee badge. Officer Wells also stated that a ladder rack attached to the rear of the truck had "Cox Cable" printed on its side.
In her deposition plaintiff stated that after the accident Johnson told her he worked for Cox and that he was afraid of losing his job (as a result of the accident). An affidavit by Sally Chamel Ponthieux was also filed by plaintiff. Ponthieux was a former Cox employee who had worked in two positions from August, 1984 to April, 1987. She had been a phone representative for repairs and was later promoted to dispatcher. Ponthieux stated that Urban personnel were used to install and disconnect cable equipment when the volume of work exceeded that which Cox personnel could handle. She said Urban personnel were dispatched in the same manner as Cox personnel, using Cox equipment and Cox dispatchers who were located at the Cox business office in New Orleans. She further stated that a Cox supervisor made the assignments *648 to both Urban and Cox personnel, and supervised them regarding their duties. Urban employees were answerable to the Cox supervisor directly. Both Urban and Cox personnel carried employee badges identifying them as Cox employees, and were required to identify themselves to customers as Cox employees. Ms. Ponthieux also stated that to the best of her knowledge, Urban personnel were permitted on occasions to use vehicles owned by Cox when performing work for Cox. Finally, she stated that Urban personnel "submitted their job information to Cox Cable service and the information would be processed on Cox Cable payroll processing equipment."
Based upon this evidence the trial court granted Cox's motion for summary judgment. For the following reasons we believe the trial court was incorrect.
We have before us affidavits by Cox employees stating that Cox did not directly employ Johnson, and that it did not own the truck he was driving at the time of the accident. There was a contract between Cox and Urban providing that Urban would install cable equipment provided by Cox. Cox was to pay Urban a fixed sum for work performed. All "materials and supplies" were to be supplied by Cox. It is unclear whether this included tools or only the cable equipment to be installed. The work had to be done to Cox specifications and comply with applicable industry and codal requirements and standards. According to the contract, Cox was "only interested in the results obtained." It reserved the "manner and means" of conducting the work to Urban.
Urban personnel were dispatched to install and disconnect cable equipment in the same manner as Cox personnelit is not clear exactly how Urban employees were "dispatched." They were used, according to plaintiff's affiant, when the volume of work exceeded that which Cox could handle with its own personnel. A Cox supervisor made assignments to Urban personnel and "supervised" them regarding their duties. Urban employees were "answerable" directly to a Cox supervisor. Urban personnel submitted "job information" to Cox which would be processed on Cox processing equipment. Apparently, this is as opposed to Urban personnel turning in job sheets to Urban which it would compile and process before submitting to Cox some type of invoice for services rendered.
Based upon this evidence we find that there is a genuine issue of material fact regarding, specifically, the crucial element of control, and generally, both Urban's status as an independent contractor and Johnson's status as a borrowed servant of Cox. Cox did not simply provide specifications for cable installation and reserve only the right to insist that the job be performed in accordance with those plans. The evidence does not show simply a division of control over Urban employees between Cox and Urban. Although Cox stated in its contract that it was only interested in the "results obtained," it exercised control of almost every aspect of its relationship with Urban personnel. They were hired [also presumably fired] and paid by Urban from the record that appears to be the extent of Urban's involvement. There was actually nothing presented to the court to indicate what measure of control Urban retained over its employees. The trial court erred in granting Cox's (and its insurer's, TIC's) motion for summary judgment.
We must now consider Penn-America's appeal as to the propriety of the trial court's annulling its earlier judgment granting it's motion for summary judgment. By that initial judgment the trial court dismissed Cox's third-party claim against Penn-America. Penn-America had argued and represented that the comprehensive general liability policy of insurance it had issued to Urban contained an exclusion for liability for bodily injury arising out of the use and operation of any automobile operated by any person in the course of his employment by Urban. In Cox's petition for nullity of judgment it alleged that the trial court was misled into believing that there was no coverage when in fact there was.
We need not reach the merits of the trial court's nullification of its earlier judgment. *649 The initial judgment in favor of Penn-America was rendered on December 11, 1987. Cox's petition for nullity of that judgment was filed on December 16, 1988. Under La.C.C.P. art. 2004 an action to annul a judgment based on the broadly construed grounds of fraud or ill practices may only be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices.
The plaintiff in a nullity action must allege in his petition that the fraud or ill practice was discovered within the year prior to his institution of the action. Talley v. Hughes, 481 So.2d 172 (La.App. 4th Cir.1985). The burden of proving that an action of nullity was brought within one year of the discovery is upon the plaintiff seeking the nullification. Gennuso v. State, 339 So.2d 335 (La.1976). The one year limitation of La.C.C.P. art. 2004 is considered a period of peremption and should be raised by an exception of no cause of action. Davis v. Sewerage and Water Board, 469 So.2d 1144 (La.App. 4th Cir.1985). Although Penn-America did not raise the exception of no cause of action to Cox's action to annul, an appellate court may notice such an exception of its own motion. La.C.C.P. art. 927. Accordingly, we will reverse the judgment of the trial court annulling its earlier judgment and remand this case to the trial court to give Cox an opportunity to amend its petition to annul, and to meet its burden of establishing that it discovered the alleged fraud or ill practice within the year preceding its filing of the action on December 16, 1988.
For the foregoing reasons, we reverse the judgment of the trial court both insofar as it granted Cox's motion for summary judgment against plaintiff, and granted Cox's motion to annul its earlier judgment which had dismissed Cox's claim against Penn-America. This case is remanded to the trial court for further proceedings consistent with the views expressed herein.
REVERSED AND REMANDED.