| ANTHONY T. STRAUGHTER, DERON ALEXANDER AND RUSSELL BICKHAM | * | NO. 2024-CA-0299 |
|---|---|---|
| | * | |
| | | COURT OF APPEAL |
| VERSUS | * | |
| | | FOURTH CIRCUIT |
| OCCIDENTAL FIRE & CASUALTY COMPANY OF NORTH CAROLINA, THE TRINITY SYSTEM, INC., AND AARON MATTHEW WHITE | * | |
| | | STATE OF LOUISIANA |
| | * * * * * * * | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2019-03996  C\W 2019-07181, DIVISION "A"
Honorable Ellen M. Hazeur, Judge
* * * * * *
**Judge Dale N. Atkins**
* * * * * *

(Court composed of Chief Judge Roland L. Belsome, Judge Daniel L. Dysart, Judge Dale N. Atkins)


Jeffrey E. Richardson (#23273)
Kyle L. Potts (#26472)
ADAMS AND REESE, LLP
701 Poydras Street, Suite 4500
New Orleans, LA 70139

      COUNSEL FOR APPELLANT, Wilshire Insurance Company


John Jerry Glas
Raymond C. Lewis
Joseph L. McReynolds
Justine M. Ware
DEUTSCH KERRIGAN LLP
755 Magazine Street
New Orleans, LA 70130

      COUNSEL FOR APPELLANTS, The Trinity System, Inc., and Aaron Matthew White

Lawrence Blake Jones
Julie Sumrall
David C. Whitmore
Kristi A. Post
BLAKE JONES LAW FIRM, LLC
701 Poydras Street, Suite 4100
New Orleans, Louisiana 70139

      COUNSEL FOR APPELLEES, Anthony Straughter, Deron Alexander, and Russell Bickham

**REVERSED AND REMANDED; STAY LIFTED**
**OCTOBER 9, 2025**

DNA

RLB

The underlying lawsuit in this matter concerns an accident between an 18-wheeler and an automobile, but the present appeal pertains to an attempt to annul a final judgment adopting a jury verdict, two consent judgments, and a settlement agreement on the basis of fraud or ill practices. Specifically, Appellants, Wilshire Insurance Company, The Trinity System, Inc., and Aaron M. White (hereinafter collectively "Defendants"), seek review of the trial court's March 7, 2024 judgment, which dismissed their Petition to Annul Judgments ("Petition to Annul") with prejudice on the basis of having granted the Exception of Peremption filed by Appellees, Anthony T. Straughter, Deron Alexander, and Russell Bickham (hereinafter collectively "Plaintiffs"). For the following reasons, we reverse the trial court's judgment and remand this matter for further proceedings consistent with this Opinion and lift the stay issued by this Court in the previous appeal concerning these parties.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

**<u>Facts and Procedure Delineated in Prior Appellate Opinion</u>**

This matter has previously been before this Court on appeal, wherein the Court summarized the factual and procedural background at that time as follows:

1

This suit arises from a collision that occurred on July 17, 2018 between a car and an 18-wheeler truck. Anthony T. Straughter ("[Mr.] Straughter") was operating a 2008 Ford Mustang carrying passengers, Deron Alexander ("[Mr.] Alexander"), Russel Bickham [("Mr. Bickham")], and De'Myron Alexander, when a 2009 International Prostar tractor-trailer owned by the Trinity System Inc. ("Trinity"), and driven by its employee, Aaron M. White ("[Mr.] White"), struck the passenger side of the vehicle.

As a result of injuries allegedly sustained, on April 12, 2019, [Mr.] Straughter, [Mr.] Alexander, and [Mr.] Bickham filed suit against [Mr.] White, Trinity, and its insurer, Wilshire Insurance Company (collectively, "Defendants"), alleging [Mr.] White was in the course and scope of his employment at the time of the accident. De'Myron Alexander filed a separate petition for damages against Defendants. Both matters were consolidated. [Mr.] Bickham and De'Myron Alexander settled their claims prior [to] trial.

On January 16, 2023, Plaintiffs filed a motion for partial summary judgment on issues of liability and course and scope of employment and a motion in limine to exclude Defendants' facts and expert witnesses and exhibits, with the exception of Dr. Everett Robert. Defendants did not oppose the motions and in February 2023, the parties entered into consent judgments [regarding these issues (hereinafter "February 2023 Consent Judgments")].

The jury trial was scheduled to begin on March 27, 2023[,] on damages. However, on or about March 13, 2023, Defendants alleged that they discovered evidence of fraud and/or ill practices.

Thereafter, on March 21, 2023, Defendants filed a motion to continue trial and a petition to annul the [February 2023] [C]onsent [J]udgments. In the motion to continue, Defendants contended that they had learned that Plaintiffs concealed telephone numbers that they had at the time of [the] accident and that telephone records that had recently been obtained showed that Plaintiffs were in contact with Cornelius Garrison ("[Mr.] Garrison"), "an indicted conspirator in over 50 staged accidents." Defendants alleged that proceeding with trial would allow Plaintiffs to commit fraud and profit from a scheme to defraud by staging the subject accident.

The petition to annul contained additional information regarding the indictment and telephone records. The petition provided that the United States Attorney for the Eastern District of Louisiana and the Federal Bureau of Investigation began an investigation of staged motor vehicle accidents that occurred in Orleans Parish, and on September 18, 2020, a federal grand jury indicted [Mr.] Garrison and other individuals on six counts of mail fraud and one count of conspiracy to commit mail fraud involving lawsuits arising from

staged motor vehicle accidents. The petition further provided that the telephone numbers identified for [Mr.] Straughter and [Mr.] Alexander appear[] numerous times on telephone records of [Mr.] Garrison on the date of the subject accident. The petition also stated that the telephone numbers [Mr.] Straughter and [Mr.] Alexander provided in discovery were different than those on the telephone records of [Mr.] Garrison. The numbers that matched the [Mr.] Garrison telephone records were found in the medical records and accident report.

Plaintiff[s] opposed the motion to continue on March 22, 2023, arguing among other things, that the discovery deadline had passed and that Defendants were aware of the possible fraud prior to March 2023. Specifically, Plaintiffs claimed that in Defendants' May 2021 discovery answers, Defendants noted that the instant suit had similarities with the accidents under investigation by the United States District Attorney for the Eastern District of Louisiana.

On March 27, 2023, prior to trial, the trial court denied the motion, stating "Discovery closed in 2021. The motion to continue the trial is denied." The matter proceeded to [a] jury trial and on March 29, 2023, the jury rendered a verdict in favor of Plaintiffs, awarding $985,000.00 to [Mr.] Straughter and $2,390,000.00 to [Mr.] Alexander. The trial court entered a judgment adopting the jury's verdict as the judgment of the court on April 13, 2023 [(hereinafter "April 2023 Judgment")]. Defendants filed for a suspensive appeal.

*Straughter v. Occidental Fire & Cas. Co. of N.C.*, 2023-0480, 0481, pp. 1-4 (La. App 4 Cir. 5/8/24), ___ So.3d ___, ___, 2024 WL 2043662, at *1-2 (footnotes omitted) (hereinafter "*Straughter I*").

### Defendants' Petition to Annul

After the trial court signed its judgment adopting the jury's verdict, on August 4, 2023, Defendants filed their Petition to Annul, which is at issue in the subject appeal. Defendants explained their Petition to Annul was timely under La. C.C.P. art. 2004 because they did not discover the grounds for the fraud and ill practices alleged therein until March 13, 2023. Describing said grounds, Defendants again referenced the investigation by the U.S. Attorney's Office for the Eastern District of Louisiana and the local Federal Bureau of Investigation that had

3

"uncover[ed] a fraud scheme involving the staging of accidents with 18-wheeler tractor-trailers and other commercial vehicles to defraud and obtain insurance settlements" ("Operation Sideswipe"). After further describing Operation Sideswipe, Defendants contended that the subject "accident bears almost all of the trademarks of a[n Operation Sideswipe] staged accident."

Defendants also explained that they had discovered that one Plaintiff, Mr. Alexander, communicated with one of the ringleaders of Operation Sideswipe, Mr. Garrison,[1] "multiple times in the days immediately before and after the . . . subject accident," as well as on the day of the accident.[2] Additionally, Defendants alleged that a telephone number for another Plaintiff, Mr. Straughter, "appear[ed] numerous times on telephone records of [Mr.] Garrison" on the date of the subject accident. Defendants contended they had been "previously unable to discover the fraud and ill practices" because Mr. Alexander and Mr. Straughter had provided different telephone numbers in their answers to interrogatories during discovery. Defendants explained they ultimately discovered the telephone numbers for Mr. Alexander and Mr. Straughter that appeared in Mr. Garrison's telephone records within medical records and the police report for the subject accident, respectively.

Further, Defendants explained they determined that the witness who had given a report to police after the subject accident but whose name was not provided in said report was Rennada Ramee ("Ms. Ramee"). Defendants stated they ultimately identified Ms. Ramee through dashboard and body camera footage from

---

[1] As explained by Defendants, Mr. Garrison was indicted for his role in staging accidents on September 18, 2020. However, four days later, Mr. Garrison was shot in his apartment and died.

[2] Defendants specified that Mr. Garrison received a call from Mr. Alexander both seventeen minutes before and seventeen minutes after the subject accident based on the telephone records they obtained.

an officer who responded to the accident. According to Defendants, Ms. Ramee was "likely a participant in the staged [a]ccident," but Defendants explained they required additional discovery to determine if telephone numbers associated with Ms. Ramee might be found in Mr. Garrison's or Plaintiffs' telephone records. Defendants also alleged that Ms. Ramee had previously been charged with insurance fraud in another case. Similarly, Defendants asserted that Mr. Straughter had also been part of prior insurance fraud incidents.

Defendants contended the trial court should annul the February 2023 Consent Judgments because they had been obtained through fraud or ill practices and enforcement of said judgments would be "unconscionable based on the actions of [Plaintiffs] and [Mr.] Garrison." As described by Defendants, one of the February 2023 Consent Judgments granted "Plaintiffs' Motion for Partial Summary Judgment on the Issue of Liability and Course and Scope of Employment," thereby "effectively decid[ing] the question of liability against" Defendants and in favor of Plaintiffs. The second February 2023 Consent Judgment, according to Defendants, "grant[ed] Plaintiffs' Motion *In Limine* to Exclude Defendants' Fact and Expert Witnesses and Exhibits," thereby effectively striking from use at trial all witnesses and exhibits identified by Defendants. Defendants alleged Mr. Straughter and Mr. Alexander committed fraud and ill practices by failing to disclose the telephone numbers they used on the date of the accident in their answers to interrogatories so as to "attempt to conceal their scheme to defraud [Defendants] by staging the [a]ccident and/or their relationship and communications with [Mr.] Garrison from" Defendants. As asserted by Defendants, alternatively, "[Mr.] Straughter's and [Mr.] Alexander's actions deprived [them] of facts and knowledge which would have enabled them to plead

5

and prove at trial the affirmative defense provided for in [La. R.S.] 9:2800.10, which is known as the Felony Bar defense."[3]

Additionally, Defendants asked the trial court to annul the May 3, 2023 settlement they reached with Mr. Bickham (hereinafter "Mr. Bickham's Settlement Agreement").[4] Defendants contended that the code article providing for annulment of judgments, La. C.C.P. art. 2004, also applies to settlement agreements. Defendants alleged that Mr. "Bickham knew of the actions, communications, and plans by and between [Mr.] Garrison, [Mr.] Straughter, [Mr.] Alexander, and [Ms.] Ramee to stage the [a]ccident and defraud" Defendants. They further asserted Mr. Bickham "was a knowing and willing participant in and contributed to actions that furthered the fraud scheme to defraud [Defendants] by staging the [a]ccident."

Finally, Defendants argued the trial court should annul its April 2023 Judgment which adopted the jury's verdict because it was also obtained through fraud or ill practices. They asserted that Mr. Alexander and Mr. Straughter "knowingly and intentionally made false and misleading statements while testifying at trial. . . . in furtherance of their fraud and ill practices to obtain a money judgment against [Defendants] arising out of the staged [a]ccident." Again, Defendants contended that enforcement of the "[j]udgment would be unconscionable." In addition, Defendants requested reasonable attorney fees and costs.

---

[3] Louisiana Revised Statutes 9:2800.10 is titled "Immunity from liability for injuries sustained while committing a felony offense." It provides, in pertinent part, that "[n]o person shall be liable for damages for injury, death, or loss sustained by a perpetrator of a felony offense during the commission of the offense or while fleeing the scene of the offense." La. R.S. 9:2800.10(A).

[4] According to the Petition to Annul, Mr. Bickham agreed to settle his claims against Defendants prior to the March 2023 trial but the agreement was not officially signed until May 2023.

## Exception of Peremption

In response, on December 29, 2023, Plaintiffs filed their Exception of Peremption. In their Memorandum in Support, Plaintiffs argued "the claims asserted . . . in the nullity action [were] preempted because the evidence . . . establishe[d] that [Defendants] knew or should have known of the grounds for the nullity action on or before May 12, 2021[,] and failed to take any action to assert their allegations of fraud." That is, Plaintiffs argued Defendants knew or should have known about the alleged fraud when they first stated in discovery on May 12, 2021, that the subject accident resembled the staged accidents in Operation Sideswipe. The particular discovery response by Defendants stated:

> Subject to and without waiving objections, Defendant refers Plaintiffs to the similarities in the circumstances of the subject motor vehicle accident and the circumstances of the motor vehicle accidents that are the subject of the investigations and legal actions of the United States Attorney for the Eastern District of Louisiana as announced from 2019 through the present.

Plaintiffs averred the above discovery response mimicked Defendant's subsequent Petition to Nullify.

As asserted by Plaintiffs, Defendants had "sufficient information" in 2021 "to trigger them to take some action – such as amending their answer to assert the affirmative defense of fraud – before the cause of action set forth in the petition for nullity was lost." Accordingly, Plaintiffs contended "that any cause of action" Defendants might have had "for alleged fraud" had been "waived by [Defendants'] failure to plead the affirmative defense of fraud in the underlying litigation." Plaintiffs further contended that Defendants could not revive the fraud cause of action by asserting fraud in their Petition to Nullify. Rather, as argued by Plaintiffs, Defendants' Petition to Nullify was preempted under the one-year time period set

forth in La. C.C.P. art. 2004. Plaintiffs averred that Defendants failed to discover the additional information supposedly supporting their fraud or ill practices claims because they did not exercise due diligence in investigating the case.

On February 9, 2024, the trial court held a hearing on Plaintiffs' Exception of Peremption and then took the matter under advisement.

## March 7, 2024 Judgment

On March 7, 2024, the trial court signed a judgment, which granted Plaintiffs' Exception of Peremption and dismissed Defendants' Petition to Annul with prejudice. It stated:

> **IT IS HEREBY ORDERED ADJUDGED, AND DECREED** that Defendants, Anthony Straughter, Deron Alexander, and Russell Bickham's Exception of Peremption is **MAINTAINED**, and Plaintiffs, The Trinity System, Inc., Aaron Matthew White, and Wilshire Insurance Company's Petition to Annul Judgments is dismissed with prejudice. Each party shall bear their own costs.

The trial court also denied Defendants' request for attorney fees.

Additionally, the trial court provided written reasons for judgment, explaining that "the allegations that form [Defendants]' nullity action were in their possession since at least May 12, 2021, the date [they] responded to [Plaintiffs]' discovery request and stated that this accident bares similarities to a staged accident." The trial court found Defendants "had knowledge of their alleged claim more than a year before filling suit." The trial court explained that while Defendants "allege[d] they were unable to discover" the alleged "connection" between the subject accident and Operation Sideswipe because of the telephone numbers provided in discovery, Plaintiffs "did not conceal their phone numbers." Rather, as described by the trial court, Defendants "never requested [Plaintiffs]' phone numbers at the time of the accident," instead "request[ing] only the phone

8

numbers [Plaintiffs] were using at the time the discovery was issue." The trial court thus reasoned that it was untrue that Plaintiffs concealed their relationship with Mr. Garrison. Instead, according to the trial court, Defendants "just failed to request the information that suggested fraud." Additionally, the trial court noted that Defendants failed to present evidence why they were unable to obtain the dashcam and body camera footage from the date of the 2018 accident, which linked Ms. Ramee to the accident, until 2023. The trial court concluded Defendants' Petition to Nullify was perempted under La. C.C.P. art. 2004 because Defendants "were aware of the facts which gave rise to their nullity claim on or before May 12, 2021, or had sufficient information 'to excite attention . . . and call for inquiry.'" The trial court found this case analogous to *Haney v. Davis*, 2006-1058 (La. App. 4 Cir. 2/14/07), 952 So.2d 804.

### *Straughter I*

Subsequently, in *Straughter I*, Defendants argued, in pertinent part, in two of their assignments of error that the trial court abused its discretion under La. C.C.P. arts. 1601 and 1602 in denying their motion to continue trial. 2023-0480, 0481, pp. 4-5, ___ So.3d at ___, 2024 WL 2043662, at *2. As explained previously, Defendants filed this motion on March 21, 2023, after discovering the evidence they allege establishes fraud or ill practices on March 13, 2023. Trial was scheduled to commence on March 27, 2023. The trial court denied Defendants' motion to continue, and the matter proceeded to a jury trial on the issue of damages for Mr. Alexander and Mr. Straughter. As explained above, by that point in time, the issue of liability had already been resolved in one of the February 2023 Consent Judgments, and Defendants had already settled with Mr. Bickham.

9

In resolving Defendants' assignments of error, this Court noted that trial courts have discretion in deciding a motion to continue but nonetheless found the trial court had abused its discretion. *Straughter*, 2023-0480, 0481, p. 6, ___ So.3d at ___, 2024 WL 2043662, at *3 (citing *Doe v. Lewis*, 2020-0320, p. 3 (La. App. 4 Cir. 12/30/20), 312 So.3d 1165, 1169). This Court explained that "the possibility of fraud being perpetrated on the judicial system warrant[ed] this Court's in[ter]ference with the trial court's discretion and constitute[d] good cause for a continuance under La. C.C.P. art. 1601." *Id.* at p. 8, ___ So.3d at ___, 2024 WL 2043662, at *4. This Court held the trial court had abused its discretion in refusing to grant Defendants' Motion to Continue to allow them to investigate the potential fraud, noting the record established a connection between Plaintiffs and Mr. Garrison who was an indicted conspirator in 50 staged motor vehicle accidents with 18-wheelers. *Id.* Specifically, this Court pointed to the "approximately 30 calls to and from [Mr.] Garrison [and Plaintiffs] on the day of the accident, both before and after the collision." *Id.* Additionally, this Court noted that there had been no prior continuances of the trial date in this case when Defendants filed their motion to continue. *Id.*

Ultimately, this Court reversed the trial court's ruling which denied Defendants' Motion to Continue; vacated the trial court's April 13, 2023 judgment, which adopted the jury's verdict; and remanded the matter with instructions to "stay any further proceedings pending disposition of the forthcoming appeal," i.e., this appeal. *Id.* Plaintiffs filed a writ application with the Louisiana Supreme Court regarding the *Straughter I* Opinion, which remains pending before that court pending our resolution of this appeal.

**ASSIGNMENT OF ERROR**

In their brief to this Court, Defendants assert one assignment of error. Specifically, they contend:

> "A final judgment obtained by fraud or ill practices may be annulled" and a petition to "annul a judgment on those grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices." La. C.C.P. art. 2004. The Original Defendants filed a petition to annul within one year of the date of the judgments obtained by fraud or ill practices. The trial court erred when it ruled that the petition to annul was preempted and needed to have been filed before there was even a final judgment to seek to annul.

Based on our review of the record and the parties' briefs, this appeal calls for us to determine whether the trial court was correct in granting Plaintiffs' Exception of Peremption with regard to Defendants' Petition to Annul.

**DISCUSSION**

In their Petition to Annul, Defendants sought to annul the February 2023 Consent Judgments, the April 2023 Judgment, and the May 2023 settlement agreement on the basis of fraud and ill practices. As previously explained, the trial court granted Plaintiffs' Exception of Peremption and denied Defendant's Petition to Annul on the basis that Defendants had knowledge of their alleged fraud claim in May 2021 based on their discovery response which was more than a year before they filed their Petition to Annul in August 2023. Accordingly, the trial court ruled Defendants did not timely file their Petition to Annul per the one-year peremptive period found in La. C.C.P. art. 2004 regarding the annulment of judgments obtained by fraud or ill practices. In their brief to this Court, Defendants argue the trial court's reasoning violated multiple rules of statutory interpretation. In pertinent part, Defendants argue the trial court's reasoning was wrong because, based on the language of La. C.C.P. art. 2004, "there cannot possibly be a petition

11

to annul pursuant to [that article] before there is a judgment." Essentially, Defendants contend they had to wait until there were judgments to annul before they could put forth their allegations of fraud. Defendants note they filed the Petition to Annul in August 2023, which was within one year of the February 2023 Consent Judgments, the April 2023 Judgment, and the May 2023 settlement, thereby putting them in compliance with the one-year time period found in La. C.C.P. art. 2004.

Plaintiffs counter the trial court correctly found Defendants' "right existed and time began to run [under La.C.C.P. art. 2004] when they admitted the similarities" to Operation Sideswipe in their May 2021 discovery response. Further, Plaintiffs contend that if a party knows or suspects fraud prior to judgment, as in this case, that party "should plead the affirmative defense of fraud" because "the law does not intend to give those with knowledge of possible fraud the opportunity to do nothing, await the result of trial, and then spring previously known allegations of fraud in a nullity action after the final judgment." That is, Plaintiffs argue Defendants did not have to wait until there were judgments to annul to assert fraud and could have, instead, pled it as an affirmative defense. We begin our discussion of the propriety of the trial court's grant of Plaintiffs' Exception of Peremption and denial of Defendants' Petition to Annul with the principles applicable to that type of exception and the standard of review.

Peremption is one of the exceptions a party raises via peremptory exception. La. C.C.P. art. 927(A)(2). It is defined as "a period of time fixed by law for the existence of a right." La. C.C. art. 3458. According to La. C.C. art. 3458, "Unless timely exercised, the right is extinguished upon the expiration of the peremptive period." As this Court has explained, "Courts strictly construe peremptive statutes

against peremption and in favor of the claim." *Int'l Rivercenter Lessee, L.L.C. v. Robinson*, 2022-0428, p. 12 (La. App. 4 Cir. 12/28/22), 355 So.3d 1125, 1133 (quoting *McGaha v. Franklin Homes, Inc.*, 2021-0244, p. 29 (La. App. 4 Cir. 2/4/22), 335 So. 3d 842, 860). In terms of the appellate standard of review, if "a peremptory exception involves the interpretation of a statute, it is a legal question that is reviewed *de novo*." *Fank v. Eagle, Inc.*, 2023-0068 (La. App. 4 Cir. 2/7/23), 382 So.3d 846, 848 (citing *Duvio v. Specialty Pools Co.*, 2015-0423, p. 12 (La. App. 4 Cir. 6/16/16), 216 So.3d 999, 1009). If, however, the parties introduced evidence at the hearing on the exception of peremption, then the appellate court reviews "the trial court's findings of fact . . . under the manifest error or clearly wrong standard of review." *Id.* If an appellate court determines the trial court erred in granting an exception of preemption and dismissing a nullity petition, the appellate court should reverse the grant of the exception and remand the matter for further proceedings. *Schiff v. Pollard*, 2015-0340, p. 5 (La. App. 4 Cir. 10/7/15), 177 So.3d 719, 722. In the matter *sub judice*, at the hearing on Plaintiffs' Exception of Peremption, both parties introduced exhibits into evidence; so, with regard to any findings of fact made by the trial court in its decision to grant Plaintiffs' Exception of Peremption, we review those under the manifest error/clearly wrong standard of review.

The peremptive period at issue herein is found in La. C.C.P. art. 2004. *Azar-O'Bannon v. Azar*, 2000-0101, p. 4 (La. App. 4 Cir. 9/27/00), 770 So.2d 458, 461 (holding that the one-year time limit found in La. C.C.P. art. 2004 "is considered a period of peremption rather than prescription" (first citing *Russland Enters., Inc. v. City of Gretna*, 1998-676, p. 5 (La. App. 5 Cir. 1/26/99), 727 So.2d 1223, 1226; and then citing *Civello v. Johnson*, 567 So.2d 643, 649 (La. App. 4th Cir. 1990))).

13

Louisiana Code of Civil Procedure Article 2004 is titled "Annulment for vices of substance; peremption of action." It provides, in pertinent part:

> A. A final judgment obtained by fraud or ill practices may be annulled.
>
> B. An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices.

La. C.C.P. art. 2004. As this Court has held, La. C.C.P. art. 2004 applies to consent judgments and settlement agreements too. *See State v. Turner*, 1997-0396 (La. App. 4 Cir. 12/23/97), 705 So.2d 293; *Allen v. Noble Drilling (U.S.) Inc.*, 1993-2383 (La. App. 4 Cir. 5/26/94), 637 So.2d 1298.

As the text of La. C.C.P. art. 2004 establishes, the peremptive period begins with "the discovery . . . of the fraud or ill practices." For purposes of La. C.C.P, art. 2004,

> The date of discovery is the date on which [the party asserting the nullity] either knew, or should have known through the exercise of reasonable diligence, of facts sufficient to "excite attention and put the [that party] on guard and call for inquiry. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead."

*Ellison v. Ellison*, 2006-0944, p. 4 (La. App. 1 Cir. 3/23/07), 960 So.2d 155, 157 (citations omitted). As the Louisiana Third Circuit Court of Appeal has held, the peremptive period commences when the party seeking to nullify the judgment had knowledge of the actions alleged to be fraudulent so as to have "the requisite knowledge of the facts that formed the basis of [the] nullity action." *Williams v. Williams*, 2009-472, 473, pp. 9-10 (La. App. 3 Cir. 11/4/09), 22 So.3d 1165, 1171. However, a party's "mere apprehension that something may be wrong is insufficient to commence the running of . . . peremption." *Ellison*, 2006-0944, p. 4,

14

960 So.2d at 157-58 (citing *Campo v. Correa*, 2001-2707, p. 12 (La. 6/21/02), 828 So.2d 502, 511).

In contrast to the situation in which a party has a "mere apprehension that something may be wrong," in *DiLeo v. Hansen*, the Louisiana Fifth Circuit Court of Appeal noted that the alleged "falsehoods and misrepresentations" were known to the party seeking to annul the consent judgment at the time he signed it. 2009-974, p. 6 (La. App. 5 Cir. 6/29/10), 45 So.3d 1120, 1123. Specifically, the alleged "falsehoods and misrepresentations" were in pleadings that he and/or his counsel had received and reviewed. *Id.* Similarly, in *Williams*, the Third Circuit noted that Ms. Williams had knowledge about Mr. Williams' allegedly fraudulent conduct because she was present when he testified about same, such that she "[u]nquestionably . . . had the requisite knowledge of the facts that formed the basis of her nullity action . . . in excess of the one-year time period set forth in [La. C.C.P.] art. 2004." 2009-472, 473, p. 10, 22 So.3d at 1171. In *Turner v. Williams*, this Court held a father's unemployed status at the time he signed a consent judgment relating to child support did not provide a basis to nullity that consent judgment more than one year later because the father knew he was unemployed when he signed the judgment. 1997-0396, p. 5 (La. App. 4 Cir. 12/23/97), 705 So.2d 293, 296.

In the matter *sub judice*, by contrast, Defendants did not "unquestionably" know about Plaintiffs' other phone numbers tied to Mr. Garrison and Ms. Ramee's involvement in the subject accident—their bases for alleging fraud and ill practices—until March 2023. It was at that time that Defendants had knowledge sufficient to start the running of the peremptive period because these alleged connections to Operation Sideswipe constituted "sufficient information, which, if

15

pursued," may "lead to the true condition of things," i.e., whether the subject accident was or was not part of Operation Sideswipe. *Alexander v. Centanni*, 2020-0321, p. 7 (La. App. 4 Cir. 1/27/21), 365 So.3d 533, 539 (citing *Bayou Fleet, Inc. v. Bollinger Shipyards, Inc.*, 2015-0487, 0702, p. 13 (La. App. 4 Cir. 7/21/16), 197 So.3d 797, 806). Prior to that time, Defendants merely suspected this case might be a staged accident part of Operation Sideswipe but did not have sufficient knowledge of the alleged fraud or ill practices. Contrary to what the trial court found, Defendants were not aware of the facts giving rise to their nullity claim until March 2023, at which time they discovered the alleged connections between Plaintiffs and Mr. Garrison and Ms. Ramee's role as the witness to the accident. Upon discovery of same, this called for further inquiry by Defendants, but the trial court denied them that opportunity and allowed the matter to proceed to trial. Defendants' "mere apprehension that something may be wrong" in May 2021— that this accident resembled those in Operation Sideswipe—was insufficient to commence the running of peremption.

Accordingly, we find Defendants timely filed their Petition to Annul on August 4, 2023, because they filed it within one year of their discovery of the alleged fraud or ill practices, i.e., within one year of March 13, 2023. We hold the trial court manifestly erred in finding the peremptive period began instead in May 2021 and in granting Plaintiffs' Exception of Peremption on that basis.

Though we have already determined Defendants timely filed their Petition to Annul within one year of their discovery of the alleged fraud, we nonetheless find it necessary to address Defendants' argument in their brief to this Court that they could not file their Petition to Annul until there were judgments to annul. We disagree with Defendants' characterization that a party's hands are tied if that party

16

knows or suspects fraud prior to there being a judgment to annul. Rather, in that instance, the party has the opportunity to not only investigate the matter further but also to plead the affirmative defense of fraud. In this latter regard, La. C.C.P. art. 1005 lists fraud as one of the affirmative defenses that a party can set forth in an answer. If the party already filed their answer prior to discovering the fraud, the party can still assert fraud as an affirmative defense by seeking permission to amend the answer with "leave of court or by written consent of the adverse party" per La. C.C.P. art. 1151.[5]

We felt compelled to address this argument because of the potential and problematic ramifications evident in Defendants' interpretation of the situation. To wait until after the trial court has issued a final judgment even if the party knows about the fraud beforehand, as Defendants propose, would require the trier of fact, whether jury or trial court judge, to revisit issues during a new trial that could have been considered during the first trial (assuming, that is, that the trial court grants the post-judgment nullity petition and orders a new trial). This is not only judicially inefficient but would also wreak havoc on the judicial system and would permit collateral attacks on judgments at the behest and in favor of a party who did not properly take advantage of the options available to them, such as investigating the matter further or pleading the affirmative defense of fraud prior to the issuance of the judgment. In this regard, we also express concern that Defendants' interpretation of the situation may encourage parties and their counsel to sit on their hands in the face of fraud; wait to see if they get a favorable judgment despite the fraud; and, if not, go for a second bite at the metaphorical apple by attempting

---

[5] If a party were to attempt to amend their answer and fail to receive permission to do so, then this, of course, changes the situation. In that instance, at least, the party would have tried to assert fraud prior to the issuance of a judgment.

to annul the judgment on the basis of fraud. We feel compelled to discourage Defendants' interpretation of this situation, which interpretation may encourage such a "do nothing" approach as cautioned by Plaintiffs in their brief to this Court. In sum, we disagree with Defendants' characterization that La. C.C.P. art. 2004 presents the only avenue for asserting a claim of fraud.

## DECREE

For the foregoing reasons, we reverse the trial court's March 7, 2024 judgment, which granted the Exception of Peremption filed by Plaintiffs and dismissed with prejudice all of Defendants' claims in their Petition to Annul. We remand this matter for the trial court to rule on the merits of Defendants' Petition to Annul, and we lift the stay issued by this Court in *Straughter I*.

**REVERSED AND REMANDED; STAY LIFTED**